UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on September 15, 2023

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.  23-cr-00043 (TNM) |
| | : | |
| v. | : | GRAND JURY ORIGINAL |
| | : | |
| JOSE SANTOS ALVARADO-VELASQUEZ, | : | VIOLATIONS: |
| | : | 18 U.S.C. § 1962(d) |
| also known as "Vago," | : | (Conspiracy to Participate in a Racketeer |
| GERLIN NEPTALI DIAZ-LOPEZ, | : | Influenced and Corrupt Organization) |
| also known as "Sicario," | : | 18 U.S.C. § 1959(a)(1) |
| JOSE ANSELMO IBARRA-CRISTALES, | : | (Violent Crime in Aid of Racketeering-Murder) |
| also known as "Chemo," | : | 18 U.S.C. § 924(c)(1)(A)(iii) |
| CARLOS ROLANDO MARTINEZ-MORA, | : | (Using, Carrying, Possessing, Brandishing, and Discharging a Firearm During and In |
| also known as "Crosty," | : | Relation to a Crime of Violence) |
| BRADLEY ANDREE MARTINEZ-MORA, | : | 18 U.S.C. § 1201(c) |
| also known as "Joker," | : | (Conspiracy to Commit Kidnapping Resulting in Death) |
| JEXON MADRID-FLORES, | : | 18 U.S.C. § 1201(a) |
| also known as "Spooky," | : | (Kidnapping Resulting in Death) |
| MILTON BENJAMIN GUEVARA-VILLATORO, | : | 18 U.S.C. § 922(g)(5)(A) |
| also known as "Malvado," | : | (Alien in Possession of a Firearm) |
| BRYAN DELFINO VASQUEZ-IZARA, | : | 18 U.S.C. § 2 |
| also known as "Smokey," | : | (Aiding and Abetting) |
| ELVIS MAURICIO MARADIAGA, | : | |
| also known as "Smokey,"  and | : | |
| CARLOS GIOVANI LINARES BOTEO, | : | FORFEITURE: 18 U.S.C. § 924(d), |
| also known as "Tiny," | : | 18 U.S.C. § 1963, and |
| | : | 28 U.S.C. § 2461(c) |
| Defendants. | : | 21 U.S.C. 853(p) |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE

## GENERAL ALLEGATIONS

At all times relevant to this indictment:

1.    The defendants, **JOSE SANTOS ALVARADO-VELASQUEZ ("ALVARADO-VELASQUEZ"),** also known as "Vago," **GERLIN NEPTALI DIAZ-LOPEZ ("DIAZ-LOPEZ"),** also known as "Sicario," **JOSE ANSELMO IBARRA-CRISTALES ("IBARRA-CRISTALES"),** also known as "Chemo," **CARLOS ROLANDO MARTINEZ-MORA ("ROLANDO MARTINEZ-MORA"),** also known as "Crosty," **BRADLEY ANDREE MARTINEZ-MORA ("ANDREE MARTINEZ-MORA"),** also known as "Joker," **JEXON MADRID-FLORES ("MADRID-FLORES"),** also known as "Spooky," **MILTON BENJAMIN GUEVARA-VILLATORO ("GUEVARA-VILLATORO"),** also known as "Malvado," **BRYAN DELFINO VASQUEZ-IZARA ("VASQUEZ-IZARA"),** also known as "Smokey," **ELVIS MAURICIO MARADIAGA ("MARADIAGA"),** also known as "Smokey," and **CARLOS GIOVANI LINARES BOTEO ("BOTEO"),** also known as "Tiny," and others known and unknown, were members and associates of "18th Street," a violent international street gang engaged in a variety of criminal activities including, among other things, acts involving murder, kidnapping, assault, robbery, witness intimidation, firearms trafficking, and narcotics trafficking in the District of Columbia, Maryland, and elsewhere.

2.    The 18th Street gang is currently active in urban and suburban areas of the United States. 18th Street members are required to commit acts of violence to further the interests of the gang.  These

violent acts are often directed against rival gang members, 18th Street members who violate gang rules or otherwise disrespect the gang, and persons who are suspected of cooperating with law enforcement. Additionally, 18th Street members sell and transport narcotics, weapons, and other contraband to generate money to support the gang and its criminal activities. Some of the proceeds of this criminal activity are wired to members of the gang's leadership in other countries. 18th Street members control geographical areas and use violence to maintain their control.

3.    Members of 18th Street are organized into "cliques," or smaller groups operating within specific cities or regions that all operate under the umbrella rules of 18th Street. Additionally, there are two larger factions of 18th Street consisting of multiple smaller cliques: The Surenos and the Revolucionarios. 18th Street is highly organized and well structured. It follows initiation rituals, uses specific gang signs, colors and symbols, and requires adherence to and enforcement of specific rules of conduct and payment of dues that are used, in part, to support the gang and its members. 18th Street cliques often work cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement.

4.    18th Street and its leaders, members, and associates use certain terms to describe the organizational structure of and certain positions within the gang, including but not limited to the following: A "Homeboy" is a full member who has been "jumped in" to the gang after he has proven his loyalty and worth to Homeboys. Being "jumped in" to the gang usually involves a physical beating at the hands of other Homeboys that lasts for 18 seconds. A "Civil," or a helper, serves as a "lookout" that alerts Homeboys to the presence of law enforcement officers or rival gangs in the neighborhood, makes deliveries of narcotics, serves as a driver for Homeboys, delivers messages, and offers other assistance to the gang. Homeboys receive approval from the 18th Street Organization's senior leadership to "jump in" a Civil and promote him to a Homeboy as a result of work the Civil

3

performed to benefit the gang, including, among other things, distributing narcotics, participating in gang-related violence, or through other means whereby the Civil is deemed to have proven his worth to the gang. A "Palabrero" is a senior Homeboy and leader who commands a clique and can order gang members to commit acts of violence, including murder, kidnapping, assault, and robbery. Homeboys teach the Civils how to weigh and distribute narcotics, and money from the sale of narcotics is given to the clique.

5.    At all times relevant to this indictment, 18th Street was comprised of leaders, members, and associates organized into factions and "cliques," that is, smaller groups operating in a specific city or region. In Washington, D.C., Maryland, and Virginia, these factions and cliques included Tiny Locos Surenos ("TLS"), Los Crazy Brothers ("LCB"), and the Revolucionarios.

a.    At all times relevant to this indictment, defendants **ALVARADO-VELASQUEZ**, **IBARRA-CRISTALES**, **ROLANDO MARTINEZ-MORA**, **ANDREE MARTINEZ-MORA**, **MARADIAGA**, and **BOTEO** were members and associates of the Los Crazy Brothers clique of 18th Street.

b.    At all times relevant to this indictment, defendants **DIAZ-LOPEZ**, **MADRID-FLORES**, **GUEVARA-VILLATORO**, and **VASQUEZ-IZARA**, were members and associates of the Tiny Locos Surenos clique of 18th Street.

c.    At all times relevant to this indictment, Carlos Ramos Martinez (hereinafter "Victim #6"), was a member and associate of the Revolucionarios clique of 18th Street.

### The Racketeering Enterprise

6.    At all times relevant to this Indictment, 18th Street, including its leadership, members and associates, constituted an "enterprise," as defined by Title 18, United States Code, Sections 1961(4) and 1959(b)(2), that is, a group of individuals associated in fact, although not a legal entity, which is

engaged in, and the activities of which affected, interstate and foreign commerce. The 18th Street enterprise is an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

### Purposes of the Enterprise

7.    The purposes of the 18th Street enterprise include the following:

a.    Preserving, expanding, and protecting the power, territory, and reputation of 18th Street through the use of violence, threats of violence, and intimidation;

b.    Promoting and enhancing 18th Street and the activities of its leaders, members, and associates by committing crimes, including, but not limited to, murder, kidnapping, robbery, and assault;

c.    Keeping victims, potential victims, and community members in fear of 18th Street and its members and associates through violence, threats of violence, and intimidation;

d.    Confronting and retaliating against rival gangs and individuals seen as a threat to 18th Street through the use of violence, threats of violence, and intimidation;

e.    Assaulting and murdering individuals believed to be cooperating with law enforcement authorities;

f.    Hindering and obstructing efforts of law enforcement authorities to identify, apprehend, and successfully prosecute offending gang members; and

g.    Coordinating activities with national leadership, and providing financial support and information to 18th Street members in El Salvador, Guatemala, and Honduras.

### Means and Methods of the Enterprise

8.    Among the means and methods by which 18th Street leaders, members, and associates conduct and participate in the conduct of the affairs of the enterprise are the following:

5

a.    18th Street leaders, members, and associates use violence, threats of violence, and intimidation to preserve, protect and expand the enterprise's territory and activities and to enhance its prestige, reputation, and position in the community;

b.    18th Street leaders, members, and associates, in order to maintain control of their territory and inspire loyalty and allegiance among their ranks, promote a climate of fear through violence, threats of violence, and intimidation;

c.    18th Street leaders, members, and associates use violence, threats of violence, and intimidation to discipline and punish members and associates who violate the rules of the gang;

d.    18th Street leaders, members, and associates use violence, threats of violence, and intimidation against individuals perceived as a threat to the power, reputation, and territory of 18th Street;

e.    18th Street leaders, members, and associates commit violent crimes in order to be promoted in the gang;

f.    18th Street leaders, members, and associates commit violent crimes, including murder, kidnapping, robbery, and assault, in order to attack members of rival gangs and to punish any 18th Street members who improperly associate with rival gang members;

g.    18th Street leaders, members, and associates use cellular phones and social media to discuss gang related business, document their crimes, publicly represent the gang through the display of 18th Street symbols and slogans, and communicate with leadership in the United States and abroad;

h.    18th Street leaders, members, and associates are indoctrinated in the beliefs, values, operations, and methods of the gang from their time living in Central American countries

such as El Salvador, Guatemala, and Honduras; and

i.     18th Street collects dues from its members and associates in order to buy firearms and narcotics/controlled substances and to provide financial support to the enterprise.

## The Racketeering Conspiracy

9.     Beginning on a date unknown to the Grand Jury, but at least since 2019, and continuing through in or about August 2022, in the District of Columbia, District of Maryland, Eastern District of Virginia, District of Delaware and elsewhere, the defendants,

**JOSE SANTOS ALVARADO-VELASQUEZ,**
**also known as "Vago,"**
**GERLIN NEPTALI DIAZ-LOPEZ,**
**also known as "Sicario,"**
**JOSE ANSELMO IBARRA-CRISTALES,**
**also known as "Chemo,"**
**CARLOS ROLANDO MARTINEZ-MORA,**
**also known as "Crosty,"**
**BRADLEY ANDREE MARTINEZ-MORA,**
**also known as "Joker,"**
**JEXON MADRID-FLORES,**
**also known as "Spooky,"**
**MILTON BENJAMIN GUEVARA-VILLATORO,**
**also known as "Malvado,"**
**BRYAN VASQUEZ-IZARA,**
**also known as "Smokey,"**
**ELVIS MAURICIO MARADIAGA,**
**also known as "Smokey," and**
**CARLOS GIOVANI LINARES BOTEO**
**also known as "Tiny,"**

and others known and unknown, each being a person employed by and associated with 18th Street, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, together with others known and unknown to the Grand Jury, did knowingly, and intentionally combine, conspire, confederate, and agree to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), consisting of multiple:

a.      Acts involving murder, in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, 1-201 and 1-202, and the Common Law of Maryland; and in violation of D.C. Code §§ 22-2101, 22-2103, 22-1803, 22-1805, and 22-1805a;

b.      Acts involving kidnapping, in violation of D.C. Code §§ 22-2001, 22-1803, 22-1805, and 22-1805a, and in violation of Maryland Code, Criminal Law §§ 3-502, 1-201, 1-202, and the Common Law of Maryland;

c.      Acts involving robbery, in violation of D.C. Code §§ 22-2801, 22-1803, 22-1805, and 22-1805a, and in violation of Virginia Code § 18.2-58 18.2-25, 18.2-26, and 18.2-22,and 18.2-18;

d.      Offenses involving drug trafficking, in violation of 21 U.S.C. §§ 841 and 846; and

e.      Acts indictable under 18 U.S.C. § 933 (relating to firearms trafficking) and 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant).

10.     It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## Means and Methods of the Conspiracy

11.     It was part of the manner and means of the conspiracy that the defendants, and other leaders, members, and associates of 18th Street, were required to have and did have regular meetings with other 18th Street gang members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; 18th Street members who were arrested or incarcerated; the disciplining of 18th Street members; police interactions with 18th Street members; the identities of individuals suspected of cooperating with law enforcement and the proposed actions to be taken against them; plans and agreements regarding the commission of future crimes, including murder, kidnapping, narcotics distribution, robbery, illegal possession and trafficking of firearms, and assault, as well as ways to conceal these crimes; and the enforcement of

gang rules. It was further part of the manner and means of the conspiracy that the defendants and other leaders, members, and associates of 18th Street agreed to purchase, maintain, and circulate firearms and other weapons for use in criminal activity by 18th Street members.

12.    It was further part of the manner and means of the conspiracy that the defendants and other leaders, members, and associates of 18th Street financed the enterprise through a variety of activities, including the sale of controlled substances, armed robberies, the sale of illegal firearms, and the collection of dues from its members and associates in order to buy firearms and narcotics/controlled substances and to provide financial support to the enterprise.

13.  It was further part of the manner and means of the conspiracy that the defendants and other leaders, members, and associates of 18th Street recruited new gang members from high schools and middle schools in Washington, D.C. and the surrounding areas.

14.  It was further part of the manner and means of the conspiracy that the defendants and other leaders, members, and associates of 18th Street agreed that acts involving murder, kidnapping, robbery, and assault, would be committed by members and associates of 18th Street against rival gang members and others when it suited the enterprise's purposes.  18th Street members also used violence to impose discipline within the gang, including against members of 18th Street who associated with members of rival gangs.

15.  It was further part of the manner and means of the conspiracy that the defendants and other leaders, members, and associates of 18th Street agreed to distribute narcotics, to use the telephone to facilitate narcotics distribution, to commit robbery, and other crimes, and to conceal their criminal activities by obstructing justice, threatening or intimidating witnesses, and other means.

16.  It was further part of the manner and means of the conspiracy that the defendants and other leaders, members, and associates of 18th Street would investigate rival gang members or other

9

persons targeted for violence; would obtain information about such targets including locations frequented by them; and would use such information in their plans to attack such targets.

17.   It was further part of the manner and means of the conspiracy that the defendants and other leaders, members, and associates of 18th Street would and did agree that acts involving murder, including conspiracy and attempts to commit murder, and other acts of violence would be committed by members and associates of 18th Street against rival gang members and persons deemed as threats to 18th Street and for the purpose of imposing discipline within the gang, and on other occasions as deemed necessary.

### Overt Acts

18.   In furtherance of the racketeering conspiracy, and to achieve the objectives thereof, the defendants **JOSE SANTOS ALVARADO-VELASQUEZ, also known as "Vago," GERLIN NEPTALI DIAZ-LOPEZ, also known as "Sicario," JOSE ANSELMO IBARRA-CRISTALES, also known as "Chemo," CARLOS ROLANDO MARTINEZ-MORA, also known as "Crosty," BRADLEY ANDREE MARTINEZ-MORA, also known as "Joker," JEXON MADRID-FLORES, also known as "Spooky," MILTON BENJAMIN GUEVARA-VILLATORO, also known as "Malvado," BRYAN VASQUEZ-IZARA, also known as "Smokey," ELVIS MAURICIO MARADIAGA, also known as "Smokey,"  and CARLOS GIOVANI LINARES BOTEO, also known as "Tiny,"** and others known and unknown to the Grand Jury,  committed and caused to be committed the following overt acts, among others, in the District of Columbia, the District of Maryland, the Eastern District of Virginia, the District of Delaware, and elsewhere:

   a.   On or about May 20, 2019, members of the TLS clique shot a firearm at victims in the 600 block of Longfellow Street NW, Washington, D.C., some of whom the TLS members believed had stolen from and disrespected the 18th Street gang.

b.  On or about September 17, 2019, **GUEVARA-VILLATORO** and other TLS clique members engaged in an assault with dangerous weapons and shooting of individuals they believed to be rival MS-13 gang members who were present in the Georgia Ave-Petworth Metro station, located at 3750 Georgia Avenue, NW, Washington, D.C.

c.  On or about October 31, 2019, **GUEVARA-VILLATORO** and members of the TLS clique conducted an 18th Street gang meeting in a laundry room within the 600 block of Longfellow Street NW, Washington, D.C.  At the gang meeting, **GUEVARA-VILLATORO** possessed a firearm used in the September 17, 2019 shooting.

d.  On or about November 21, 2019, members of the TLS clique murdered Sara Gutierrez-Villatoro (hereinafter "Victim #1") in Montgomery County, Maryland, by shooting her with a firearm.  Victim #1 was murdered because she had a relationship with an MS-13 gang member and was providing information to that gang about 18th Street.

e.  On or about February 29, 2020, **BOTEO, MARADIAGA, ANDREE MARTINEZ-MORA**, and other LCB clique members assaulted and robbed W.S. (hereinafter "Victim #3") in the Community Plaza in Sterling, Virginia.  Prior to the assault and robbery, the LCB clique members flashed gang signs and identified themselves as members of 18th Street.

f.  On or about March 6, 2020, **BOTEO, ANDREE MARTINEZ-MORA**, and other TLS and LCB clique members conducted a gang meeting at the Raymond Recreational Center located at 3725 10th Street NW, Washington, D.C., during which internal gang business was discussed to include issues with rival gangs, taking inventory of firearms belonging to the gang, and planning to locate and attack rival

gang members in Langley Park, Maryland.

g. On or about March 27, 2020, in Washington, D.C., members of the TLS and LCB cliques known and unknown to the Grand Jury, held a meeting at the Raymond Recreational Center located at 3725 10th Street NW, Washington, D.C. to discuss 18th Street internal business.

h. On or about May 21, 2021, **MADRID-FLORES** and another TLS clique member known to the Grand Jury brandished firearms at C.H. (hereinafter "Victim #4") and then shot Victim #4 in the 5700 block of 14th Street NW, Washington, D.C., because they believed he was a member of MS-13, a rival gang.

i. On or about July 2, 2021, **ROLANDO MARTINEZ-MORA** shot D.L. (hereinafter "Victim #5) in front of the Atlantic Food Market on 1901 New Hampshire Avenue, Hyattsville, Maryland.

j. On or about July 12, 2021, **VASQUEZ-IZARA**, other TLS and LCB clique members known to the Grand Jury, and Victim #6 met at a Motel 6 in Washington, D.C. to discuss an LCB member switching membership to the TLS clique.

k. On or about July 12, 2021, **MARADIAGA, ROLANDO MARTINEZ-MORA, ANDREE MARTINEZ-MORA, MADRID-FLORES, DIAZ-LOPEZ, VASQUEZ-IZARA**, other TLS and LCB clique members known to the Grand Jury, and Victim #6 met in College Park, Maryland to discuss an LCB member switching membership to the TLS clique. At this meeting, internal gang issues were also discussed to include issues that the LCB clique had with Victim #6. The meeting concluded with **DIAZ-LOPEZ** being jumped in and promoted to Homeboy.

l. Between on or about July 12, 2021, and July 13, 2021, **ROLANDO MARTINEZ-**

**MORA** communicated with **BOTEO**, who was incarcerated at the time, and discussed internal gang issues and directives.

m. On or about July 13, 2021, **MADRID-FLORES, DIAZ-LOPEZ, VASQUEZ-IZARA, MARADIAGA, ANDREE MARTINEZ-MORA, ALVARADO-VELASQUEZ, ROLANDO MARTINEZ-MORA**, and others, known and unknown to the Grand Jury, held a gang meeting in a location in Northwest Washington, D.C. led by **GUEVARA-VILLATORO** who appeared via FaceTime on **DIAZ-LOPEZ's** cellphone from El Salvador.  At the meeting, all of the Homeboys present voted to remove Victim #6 from the Washington, D.C. area by means of seizing, confining, inveigling, enticing, decoying, kidnapping, abducting, concealing, or carrying away.

n. On or about July 13, 2021, and July 14, 2021, **ALVARADO-VELASQUEZ** and other 18th Street members known to the Grand Jury drove Victim #6 out of the District of Columbia while armed with at least one firearm. The group stopped between mile marker 103.3 and 103.4 on Interstate 95.

o. On or about July 13, 2021, and July 14, 2021, **ROLANDO MARTINEZ-MORA** and **ANDREE MARTINEZ-MORA** provided **IBARRA-CRISTALES, DIAZ-LOPEZ**, and another 18th Street member known to the Grand Jury with a white van to be used in the murder of Victim #6.

p. On or about July 14, 2021, **DIAZ-LOPEZ, ALVARADO-VELASQUEZ**, and other 18th Street members known to the Grand Jury murdered Victim #6 in a wooded area near Elkton, Maryland by shooting him multiple times with firearms.

q. On or about July 14, 2021, **DIAZ-LOPEZ** and **ALVARADO-VELASQUEZ**

burned the vehicle used to transport Victim #6 to the location of his murder in Wilmington, Delaware.

r.  On or about July 14, 2021, **MADRID-FLORES** drove members of 18th Street known to the Grand Jury home from Maryland to Washington, D.C. following the murder of Victim #6.

s.  On or about July 15, 2021, **IBARRA-CRISTALES** and members of 18th Street known and unknown to the Grand Jury took a TLS member to New Jersey by means of seizing, confining, inveigling, enticing, decoying, kidnapping, abducting, concealing, or carrying away following the TLS clique member's participation in the murder of Victim #6.

t.  On or about October 31, 2021, at the Fort Totten Metro station within the District of Columbia, **ALVARADO-VELASQUEZ**, , and other TLS and LCB clique members known and unknown to the Grand Jury conducted an armed robbery of a rival MS-13 gang member, P.G. (hereinafter "Victim #7), in the Fort Totten Metro Station and took money and a Samsung cell phone from Victim #7.

u.  On or about November 15, 2021, **DIAZ-LOPEZ, ANDREE MARTINEZ-MORA, ROLANDO MARTINEZ-MORA, MARADIAGA**, and other TLS and LCB clique members known and unknown to the Grand Jury posed for a picture in a hotel room while brandishing firearms and flashing 18th Street hand signs.

v.  On or about December 18, 2021, **DIAZ-LOPEZ, ROLANDO MARTINEZ-MORA** and other TLS and LCB clique members known and unknown to the Grand Jury met to conduct an 18th Street gang meeting.  At the meeting, **ROLANDO MARTINEZ-MORA** instructed members of the 18th Street gang that their mission

that evening was to locate and kill rival MS-13 gang members. Members of the 18th Street gang, known and unknown to the Grand Jury, and while in possession of firearms, hunted for rival gang members around Maryland.

w. On or about December 19, 2021, **DIAZ-LOPEZ** and **ROLANDO MARTINEZ-MORA**, and other TLS and LCB clique members known and unknown to the Grand Jury traveled to the Coco Cabana club located in Prince George's County, Maryland for the purpose of locating rival MS-13 gang members to attack.

x. On or about December 19, 2021, **ROLANDO MARTINEZ-MORA** identified Danis Alcides Salgado Mata ("hereinafter Victim 8") as an MS-13 member whom 18th Street members known to the Grand Jury were ordered to kill.

y. On or about December 19, 2021, 18th Street members known to the Grand Jury followed Victim #8 and his family members to their home in a vehicle.

z. On or about December 19, 2021, 18th Street members known to the Grand Jury murdered Victim #8 whom they believed to be a rival gang member by shooting him in the 13700 block of Ashby Road, Rockville, Maryland, and attempted to murder A.B. (hereinafter "Victim #9") and G.M. (hereinafter "Victim #10) by shooting them in the 13700 block of Ashby Road, Rockville, Maryland.

aa. On or about December 19, 2021, 18th Street members known to the Grand Jury drove to Washington, D.C. following the murder of Victim #8 and left their vehicle on a street in Northwest Washington, D.C.

bb. Between on or about July 2021 and December 2021, **ALVARADO-VELASQUEZ**, **ROLANDO MARTINEZ-MORA**, and other 18th Street members known to the Grand Jury stabbed and shot at a suspected MS-13 member in Adelphi, Maryland.

15

cc. On or about February 6, 2022, **DIAZ-LOPEZ, ANDREE MARTINEZ-MORA, ROLANDO MARTINEZ-MORA, ALVARADO-VELASQUEZ,** and other TLS and LCB clique members known and unknown to the Grand Jury posed for a picture in a room while showing their gang tattoos and flashing 18th Street hand signs.

dd. On March 1, 2022, **ALVARADO-VELASQUEZ** and other 18th Street members possessed a 9mm handgun in a vehicle in front of 5423 16th Avenue, Hyattsville, Maryland.

ee. On or about March 12, 2022, **ANDREE MARTINEZ-MORA, ROLANDO MARTINEZ-MORA, MARADIAGA,** and other 18th Street members known and unknown to the Grand Jury posed for a picture in a bedroom while brandishing a firearm, holding a large bag of a substance appearing to be marijuana, and flashing 18th Street hand signs.

ff. On April 6, 2022, **ROLANDO MARTINEZ-MORA** and other 18th Street members known to the Grand Jury met in a hotel room in Winchester, Virginia. **ROLANDO MARTINEZ-MORA** later admitted to being a Homeboy in the LCB clique and confirmed that his gang nickname was "Crosty."

gg. On July 11, 2022, **VASQUEZ-IZARA** and **ANDREE MARTINEZ-MORA** possessed a Taurus handgun and Glock 19 handgun in a vehicle near the intersection of Ray Road and Chillum Manor Road, Hyattsville, Maryland.

hh. On August 6, 2022, **IBARRA-CRISTALES** posted a photograph on his social media account depicting a tattoo of his gang nickname "Chemo."

**<u>Special Sentencing Factors Regarding Count One</u>**

19. Between or about July 12, 2021, and July 14, 2021, in the District of Columbia, the

District of Maryland, and elsewhere, **GUEVARA-VILLATORO, ROLANDO MARTINEZ-MORA, DIAZ-LOPEZ, ALVARADO-VELASQUEZ,** and **IBARRA-CRISTALES** conspired, with each other and others known and unknown to the Grand Jury to feloniously, willfully and with deliberately premeditated malice, kill and murder Victim #6, in in violation of Maryland Code, Criminal Law §§ 2-201(a)(1) and (a)(4)(vi), 1-202, and the Common Law of Maryland; and to purposely, and with deliberate and premeditated malice, and with malice aforethought, to kill Victim #6, in violation of D.C. Code §§ 22-2101, 22-2103 and 22-1805a.

20.     On or about July 14, 2021, in the District of Columbia, the District of Maryland and elsewhere, **GUEVARA-VILLATORO, ROLANDO MARTINEZ-MORA, DIAZ-LOPEZ, ALVARADO-VELASQUEZ,** and **IBARRA-CRISTALES** and others known to the Grand Jury feloniously, willfully, and with deliberately premeditated malice, killed and murdered Victim #6, in violation of Maryland Code, Criminal Law §§ 2-201(a)(1) and (a)(4)(vi), and the Common Law of Maryland; and in violation of D.C. Code §§ 22-2101, 22-2103 and 22-1805.

21.     Between on or about December 18, 2021, and December 19, 2021, in the District of Columbia, the District of Maryland and elsewhere, **ROLANDO MARTINEZ-MORA** conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice kill and murder Victim #8, in violation of Maryland Code, Criminal Law §§ 2-201(a)(1) and (a)(4)(vi), 1-202, and the Common Law of Maryland; and to purposely, and with deliberate and premeditated malice, and with malice aforethought, to kill Victim #8, in violation of D.C. Code §§ 22-2101, 22-2103 and 22-1805a.

22.     On December 19, 2021, in the District of Columbia, the District of Maryland and elsewhere, **ROLANDO MARTINEZ-MORA** and others known and unknown to the Grand Jury feloniously, willfully, and with deliberately premeditated malice, killed and murdered Victim #8, in

violation of Maryland Code, Criminal Law §§ 2-201(a)(1) and (a)(4)(vi), and the Common Law of

Maryland; and in violation of D.C. Code §§ 22-2101, 22-2103 and 22-1805.

(**Conspiracy to Participate in a Racketeer Influenced and Corrupt Organization**, in violation of
Title 18, United States Code, Section 1962(d))

### COUNT TWO

The Grand Jury further charges that:

23.      The allegations contained in Paragraphs 1 through 8  of this Indictment are

incorporated by reference as though fully set forth herein.

24.      At all times relevant to this Indictment, the 18th Street enterprise, through its leaders,

members, and associates, engaged in racketeering activity, as defined in Title 18, United States Code,

Sections 1959(b)(1) and 1961(1), that is, acts involving murder and kidnapping, in violation of

District of Columbia and Maryland law; acts involving robbery, in violation of District of Columbia

and Virginia law; offenses involving drug trafficking, in violation of Title 21, United States Code,

Sections 841 and 846; and acts indictable under Title 18, United States Code, Section 933 (relating

to firearms trafficking) and Title 18, United States Code, Section 1512 (relating to tampering with a

witness, victim or informant.

25.      On or about July 14, 2021, in the District of Columbia, the District of Maryland, and

elsewhere, the defendants,

**JOSE SANTOS ALVARADO-VELASQUEZ,**
**also known as "Vago,"**
**GERLIN NEPTALI DIAZ-LOPEZ,**
**also known as "Sicario,"**
**JOSE ANSELMO IBARRA-CRISTALES,**
**also known as "Chemo,"**
**CARLOS ROLANDO MARTINEZ-MORA,**
**also known as "Crosty,"**
**MILTON BENJAMIN GUEVARA-VILLATORO, and**
**also known as "Malvado,"**

18

with others known, while aiding and abetting each other, for the purpose of gaining entrance to, and

maintaining and increasing position in, 18th Street, an enterprise engaged in racketeering activity,

unlawfully and knowingly did murder Victim #6, in violation of Maryland Code, Criminal Law §§ 2-

201(a)(1) and (a)(4)(vi), and the Common Law of Maryland; and in violation of D.C. Code §§ 22-

2101, 22-2103, and 22-1805.

**(Violent Crime in Aid of Racketeering – Murder**, in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.)

## COUNT THREE

The Grand Jury further charges that:

26.     Between on or about July 12, 2021, and July 14, 2021, in the District of Columbia, the

District of Maryland and elsewhere, the defendants,

**JOSE SANTOS ALVARADO-VELASQUEZ,**
**also known as "Vago,"**
**GERLIN NEPTALI DIAZ-LOPEZ,**
**also known as "Sicario,"**
**JOSE ANSELMO IBARRA-CRISTALES,**
**also known as "Chemo,"**
**CARLOS ROLANDO MARTINEZ-MORA,**
**also known as "Crosty,"**
**BRADLEY ANDREE MARTINEZ-MORA,**
**also known as "Joker,"**
**JEXON MADRID-FLORES,**
**also known as "Spooky,"**
**MILTON BENJAMIN GUEVARA-VILLATORO,**
**also known as "Malvado,"**
**BRYAN VASQUEZ-IZARA,**
**also known as "Smokey,"**
**ELVIS MAURICIO MARADIAGA,**
**also known as "Smokey," and**
**CARLOS GIOVANI LINARES BOTEO**
**also known as "Tiny,"**

did knowingly and willfully combine, conspire, confederate, and agree with others known and

unknown to the Grand Jury to unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry

away Victim #6, and hold Victim #6 for any reason, when (1) Victim #6 was willfully transported

from the District of Columbia to the District of Maryland; (2) the defendants and others known and

unknown to the Grand Jury traveled in interstate commerce from the District of Columbia to the

District of Maryland; and (3) the defendants and others known and unknown to the Grand Jury used

any means, facility, and instrumentality of interstate commerce in committing and in furtherance of

the commission of the offense, which resulted in the death of Victim #6, in violation of Title 18,

United States Code, Section 1201(a)(1).

**(Conspiracy to Commit Kidnapping Resulting in Death**, in violation of Title 18, United States
Code, Section 1201(c))

### COUNT FOUR

The Grand Jury further charges that:

27.     Between on or about July 13, 2021, and July 14, 2021, in the District of Columbia,

the District of Maryland and elsewhere, the defendants,

**JOSE SANTOS ALVARADO-VELASQUEZ,**
**also known as "Vago,"**
**GERLIN NEPTALI DIAZ-LOPEZ,**
**also known as "Sicario,"**
**JOSE ANSELMO IBARRA-CRISTALES,**
**also known as "Chemo,"**
**CARLOS ROLANDO MARTINEZ-MORA,**
**also known as "Crosty,"**
**MILTON BENJAMIN GUEVARA-VILLATORO, and**
**also known as "Malvado,"**

did unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away Victim #6, and hold

Victim #6 for any reason, when (1) Victim #6 was willfully transported from the District of Columbia

to the District of Maryland; (2) the defendants and others known and unknown to the Grand Jury

traveled in interstate commerce from the District of Columbia to the District of Maryland; and (3) the

defendants and others known and unknown to the Grand Jury used any means, facility, and

instrumentality of interstate commerce in committing and in furtherance of the commission of the offense, which resulted in the death of Victim #6, in violation of Title 18, United States Code, Section 1201(a)(1).

(**Kidnapping Resulting in Death**, in violation of Title 18, United States Code, Sections 1201(a) and 2.)

**COUNT FIVE**

The Grand Jury further charges that:

28.     On or about July 14, 2021, within the District of Columbia, the District of Maryland and elsewhere, **JOSE ALVARADO-VELASQUEZ, also known as "Vago," GERLIN NEPTALI DIAZ-LOPEZ, also known as "Sicario," and JOSE ANSELMO IBARRA-CRISTALES, also known as "Chemo,"** with others known to the Grand Jury, while aiding and abetting each other, did each unlawfully and knowingly use, carry, brandish, and discharge a firearm, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is/to wit, Violent Crime in Aid of Racketeering – Murder charged in Count Two of this Indictment.

(**Using, Carrying, Possessing, Brandishing, and Discharging a Firearm During and In Relation to a Crime of Violence,** in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.))

**COUNT SIX**

The Grand Jury further charges that:

29.     On or about July 14, 2021, within the District of Columbia, the District of Maryland and elsewhere, **JOSE SANTOS ALVARADO-VELASQUEZ, also known as "Vago," GERLIN NEPTALI DIAZ-LOPEZ, also known as "Sicario," JOSE ANSELMO IBARRA-CRISTALES, also known as "Chemo,"** each defendant knowing that he, himself, was an alien illegally and unlawfully in the United States, did each knowingly and unlawfully possess a firearm and ammunition, to wit: five (5) rounds of 9mm ammunition; a purple Taurus 9mm handgun; and a .22

21

Short caliber CDM Products Inc. revolver, Model CDM, Serial number 145009, said firearms and ammunition having been shipped and transported in interstate or foreign commerce.

**(Unlawful Possession of a Firearm by an Alien Illegally or Unlawfully in the United States**, in violation of Title 18, United States Code, Section 922(g)(5))

## COUNT SEVEN

The Grand Jury further charges that:

30.    The allegations contained in Paragraphs 1 through 8 and Paragraph 24 of this Indictment are incorporated by reference as though fully set forth herein.

31.    On or about December 19, 2021, within the District of Columbia, the District of Maryland and elsewhere, **CARLOS ROLANDO MARTINEZ-MORA, also known as "Crosty,"** with others known to the Grand Jury, while aiding and abetting each other, for the purpose of gaining entrance to, and maintaining and increasing position in, 18th Street, an enterprise engaged in racketeering activity, unlawfully and knowingly did murder Victim #8, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland; and in violation of D.C. Code §§ 22-2101, 22-2103, and 22-1805.

**(Violent Crime in Aid of Racketeering – Murder**, in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.)

### Notice of Special Findings

32.    The allegations of Counts Two, Four, and Seven of this Indictment are hereby realleged as if fully set forth herein and incorporated by reference.

33.    As to Counts Two, Four, and Seven of this Indictment:

a.    Defendants **JOSE SANTOS ALVARADO-VELASQUEZ, GERLIN NEPTALI DIAZ-LOPEZ, JOSE ANSELMO IBARRA-CRISTALES, CARLOS ROLANDO**

22

**MARTINEZ-MORA**, and **MILTON BENJAMIN GUEVARA-VILLATORO** were not less than 18 years of age at the time of the offense (Title 18 United States Code, Section 3591(a));

      b.     Defendants **JOSE SANTOS ALVARADO-VELASQUEZ** and **GERLIN NEPTALI DIAZ-LOPEZ** intentionally killed Carlos Ramos Martinez (Title 18, United States Code, Section 3591(a)(2)(A);

      c.     Defendants **JOSE ANSELMO IBARRA-CRISTALES, CARLOS ROLANDO MARTINEZ-MORA**, and **MILTON BENJAMIN GUEVARA-VILLATORO** intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Carlos Ramos Martinez died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(C);

      d.     Defendant **CARLOS ROLANDO MARTINEZ-MORA** intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Danis Alcides Salgado Mata died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(C);

      e.     Carlos Ramos Martinez's death, and injuries resulting in death, occurred during the commission and attempted commission of offenses under Section 1201 of Title 18 (kidnaping) (Title 18, United States Code, Section 3592(c)(1));

      f.     Defendant **CARLOS ROLANDO MARTINEZ-MORA**, in the commission of the offense against Danis Alcides Salgado Mata, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense (Title 18, United States Code, Section 3592(c)(5));

g.      Defendants **JOSE SANTOS ALVARADO-VELASQUEZ, GERLIN NEPTALI DIAZ-LOPEZ, JOSE ANSELMO IBARRA-CRISTALES, CARLOS ROLANDO MARTINEZ-MORA**, and **MILTON BENJAMIN GUEVARA-VILLATORO** committed the offense against Carlos Ramos Martinez after substantial planning and premeditation to cause the death of a person (Title 18, United States Code, Section 3592(c)(9)); and

h.      Defendant **CARLOS ROLANDO MARTINEZ-MORA** committed the offense against Danis Alcides Salgado Mata after substantial planning and premeditation to cause the death of a person (Title 18, United States Code, Section 3592(c)(9)).

## FORFEITURE ALLEGATION

34.      As a result of committing the racketeering offense alleged in Count One of this Indictment, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963:

a.      any and all interests the defendants acquired and maintained in violation of Title 18, United States Code, Section 1962;

b.      any and all interests in, securities of, claims against, and property and contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

c.      any and all property constituting and derived from any proceeds which the defendants obtained, directly and indirectly, from the racketeering activity alleged in Count One of this Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

## SUBSTITUTE ASSET PROVISION

24

35.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)     cannot be located upon the exercise of due diligence;

    (b)     has been transferred or sold to, or deposited with, a third person;

    (c)     has been placed beyond the jurisdiction of the Court;

    (d)     has been substantially diminished in value; or

    (e)     has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

36.     Upon conviction of the offenses alleged in Counts Two, Four, Five, Six and Eight, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), any firearms and ammunition involved in or used in the knowing commission of the offenses.

37.     If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e)     has been commingled with other property that cannot be divided without difficulty; the defendants shall forfeit to the United States any other property of the defendants, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

25

(**Criminal Forfeiture**, pursuant to Title 18, United States Code, Section 924(d), Title 28, United States Code, Section 2461(c), and Title 18 United States Code, Section 1963)

A TRUE BILL:

FOREPERSON.

*Matthew M. Graves / dc*

Attorney of the United States in
and for the District of Columbia.